## CIRCUIT COURT OF NORTHUMBERLAND COUNTY

Charles Z. Buki
and Kimberly A. Marsho

v.

Donald W. Devine, Jr.,
and Nancy W. Devine

Case No. CL07-113

BY JUDGE HARRY T. TALIAFERRO, III

March 8, 2013

This suit arises from a dispute which arose after the plaintiffs Charles Z. Buki and Kimberly A. Marsho purchased Rock Hall, an over 200 year old historic home located on Smith Point in Northumberland County, Virginia, from the defendants Donald W. Devine, Jr., and Nancy W. Devine. In their Second Amended Complaint, the plaintiffs sought in Count One the rescission of their purchase of Rock Hall, in Count Two treble damages under the Virginia Consumer Protection Act ("VCPA"), and in Count Three an award of compensatory and punitive damages based on fraud for replacement of windows and repairs to the house.

By a Decree of Reference the matters in issue in this suit were referred to Carl F. Bowmer, a Commissioner in Chancery of this Court, to hold an evidentiary hearing, to receive arguments and consider legal authorities offered by counsel and to submit to this Court a report on his findings of

facts and conclusions of law on twelve stated issues. The Commissioner also undertook the determination of several ancillary issues referred to him by Orders of this Court. The Commissioner conducted a two day hearing in which he heard the *ore tenus* testimony of thirteen witnesses and received *de bene esse* testimony on depositions of five witnesses. The Commissioner admitted forty-nine exhibits of the plaintiffs, thirteen exhibits of the defendants, and one joint exhibit. After considering briefs and proposed findings submitted by counsel, the Commissioner duly filed his Report of Commissioner in Chancery with this Court. The defendants filed thirteen exceptions to the Commissioner's conclusions of law and findings of fact, on which the Court heard arguments on July 12, 2011.

## Overview of the Plaintiffs' Case

The crux of plaintiffs' case is that they agreed to buy and closed their purchase in reliance on promotional materials approved by Mr. Devine which stated that Rock Hall, including its foundation, had been completely restored, and upon Mr. Devine's misrepresentations through his agent Ms. Rebecca Lemmon that mold and water damage in the ceiling and wall of the living room found in plaintiffs' professional home inspection was the result of a one-time incursion of rain water coming through a window left open during Hurricane Ernesto. During all this time, Mr. Devine had full knowledge of the condition of the sill and corner boards of the home and the removal and replacement of siding and corner boards.

After closing, the plaintiffs experienced several incursions of rain water into the house during storms. Although they felt "swindled," the plaintiffs undertook replacement at their own cost of windows and a door. This involved removing some sections of the interior drywall exposing the back of the exterior siding. Light could be seen coming through gaps that were not visible from outside and it was through these gaps rain water entered the house. After installing new windows, the plaintiffs brought in a contractor to look at replacing the exterior siding. Except for the two lower courses, the siding was old. The two lower courses which appeared new were then removed revealing that the wooden sill beam on which the house sat had rotted out and deteriorated to the point of failure.

The plaintiffs further learned that, after the defendants acquired Rock Hall, they had the aluminum siding which had been on the house for decades removed. The siding underneath was of poplar and was old. During the course of defendants' work on the house before it was put on the market, the bottom two courses of old siding running all the way around the house were removed. This exposed the deteriorated condition of the wooden sill. The defendants then had knowledge of a significant structural problem with the house. The removed siding was then replaced by defendants with new cedar siding covering the sill, and old corner boards, which had deteriorated, were also removed and replaced with new material. The other old siding

was not removed and remained on the house. Defendants then had all the exterior siding painted.

This letter rules upon the exceptions to the Commissioner's Report.

## Standard of Review

"When a chancellor refers a cause to a commissioner for assistance and relief from certain duties incidental to the progress of a cause, he does not delegate to the commissioner his judicial functions. He is not bound by the commissioner's recommendations. It is the chancellor's duty to review the evidence according to the correct principles of law and arrive at his own conclusions." *Lawrence v. Lawrence*, 212 Va. 44, 47, 181 S.E.2d 640, 643 (1971).

Section 8.01-610 Code of Virginia provides that the report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the Court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence. Case law has interpreted the statute to mean that the trial court should sustain the Commissioner's Report unless the court concludes that the Commissioner's findings are not supported by the evidence. This rule particularly applies to a Commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of law contained in his report. *Hill v. Hill*, 227 Va. 569, 318 S.E.2d 292 (1984); *Dodge v. Dodge*, 2 Va. App. 238, 343 S.E.2d 363 (1986).

## Report of Commissioner in Chancery

The Commissioner's Report sets forth in its introduction a summary of the Commissioner's pre-hearing decisions in which he overruled defendants' Demurrer to Count One of the Amended Complaint, rejecting defendants' argument that plaintiffs had not acted promptly in suing for rescission, overruled defendants' Plea in Bar to Count Two, finding that the VCPA claim was not time barred by the statute of limitations because, pursuant to § 8.01-6.1, it related back to the same occurrence, sustained defendants' Demurrer to Count Two upon the ground that reliance had not been adequately alleged, with leave to plaintiffs to file an amended claim, and, finally, overruled defendants' Demurrer to Count Three upon finding that consequential damages may be recovered in an action for rescission. The Commissioner also reported in the introduction to his report that he had overruled defendants' Demurrer to the Second Amended Bill of Complaint, finding that *caveat emptor* did not bar the plaintiffs' claim and because the same issue had been ruled on by the Court by its Order dated July 29, 2008.

The Commissioner's Report made:
    (1) Findings of fact on:
        (A) Uncontested facts and

(B) Contested facts concerning
    (i) Water leaks,
    (ii) Condition of the sill and corner boards, and
    (iii) Promotional materials, and ·
(2) Conclusions of Law on:
    (A) Fraud concerning
        (i) False representations,
        (ii) Materiality/reliance,
        (iii) Intent to mislead, and
        (iv) Damage or injury,
    (B) *Caveat emptor* and
    (C) Virginia Consumer Protection Act, and
(3) Relief Awarded on:
    (A) Rescission,
    (B) Damages, and
    (C) Attorney's fees and costs.

The Commissioner's Report found the plaintiffs by the standard of clear and convincing evidence to be entitled to rescission of their purchase of Rock Hall, a refund of their purchase price, an award of damages to include window and door replacement, interest on two deeds of trust, and insurance and taxes paid on the property. Additionally, upon a finding of willful violation of the VCPA, the Commissioner found the plaintiffs to be entitled to double the damage amount and an award of their attorney's fees and costs.

The Commissioner's Report finally sets forth the Commissioner's responses to the fourteen questions propounded or referred by order to him as follows:

1. Whether the defendants committed fraud upon the plaintiffs with regard to the condition of the main structural sill beam on which the house sits.

Yes. The defendants committed fraud as alleged and proved by plaintiffs.

2. Whether the defendants committed fraud upon the plaintiffs with regard to the source of the leaking, causing damage observed during pre-closing inspections.

Yes. The defendants committed fraud as alleged and proved by plaintiffs.

3. Whether, as a result of such fraud, the plaintiffs are entitled to a rescission of the contract.

Yes. The plaintiffs are entitled to rescission of the contract.

4. The quantum of monetary damages the plaintiffs are entitled to recover, if any, to most closely put them in that position they would have been in had they never entered into the contract.

The quantum of monetary damages which plaintiffs have proved to restore them to their precontract position is $163,089.79

5. Whether the defendants' fraud, if any, is of such character as would entitle the plaintiffs to punitive damages.

No punitive damages will be awarded in light of the enhanced damage recovery provided by the VCPA.

6. The amount of such punitive damages, if any.

None

7. Whether the plaintiffs are entitled to recover their reasonable attorney's fees as provided in the underlying real estate contract.

Because rescission of the contract has been elected and this relief granted, no attorney's fees are recoverable under the real estate contract.

8. The amount of such attorney's fees, if any.

No attorney's fees are recoverable under the real estate contract.

9. Whether the defendants' fraud, if shown, constitutes a violation of the Virginia Consumer Protection Act.

Plaintiffs have shown by clear and convincing evidence that the defendants' fraud constitutes a violation of the VCPA.

10. Whether any such fraud of the defendants as shown was a willful violation of the Virginia Consumer Protection Act.

Plaintiffs have shown by clear and convincing evidence that defendants' fraud was a willful violation of the VCPA.

11. If the plaintiffs are entitled to recover under the Virginia Consumer Protection Act, the amount of the plaintiffs' reasonable attorney's fees and court costs.

Defendants' fraud was a willful violation of the VCPA which entitled plaintiffs to recover their reasonable attorney's fees in the amount of $88,914.31 and costs in the amount of $9,661.35

12. The amount of actual damages, if any, sustained by the plaintiffs as a result of any violation of the Virginia Consumer Protection Act by the defendants which may be shown.

The amount of actual damages sustained and proved by plaintiffs is $163,099.79. In the discretion of the Commissioner, this sum should be doubled to $326,199.58

13. Whether the plaintiffs Virginia Consumer Protection Act claim relates back under Virginia Code § 8.01-6.1 or whether, alternatively, it is time barred.

Yes. Plaintiffs' VCPA claim relates back to the date of filing of the original complaint for the reasons stated in the Commissioners's letter opinion of February 4, 2010, Exhibit A.

14. Whether failure to move for rescission upon discovery of the alleged cause of the leaking windows bars the plaintiffs' claims regarding that alleged misrepresentation.

No. The plaintiffs' claim is not barred for the reasons stated in the Commissioner's letter opinion of February 4, 2010.

### Defendants Exceptions to the Commissioner's Report

The defendants, Donald and Nancy Devine, by counsel, filed the following exceptions to the Commissioner's adverse conclusions of law and findings of fact:

(1) Defendants respectfully except to the Commissioner's decision not to entirely sustain Defendants' demurrer and plea in bar to Plaintiffs' Amended Complaint and his decision to allow Plaintiffs to amend that portion of the Complaint which the Commissioner found demurrable.

(2) Defendants respectfully except to the Commissioner's decision to overrule their demurrer and plea in bar to Plaintiffs' Second Amended Complaint.

(3) Defendants respectfully except to the Commissioner's refusal to strike and dismiss at the hearing of this matter claims advanced by the Plaintiffs.

(4) Defendants respectfully except to the Commissioner's finding that Plaintiffs proved by clear and convincing evidence that Defendants committed fraud. Plaintiffs submitted no evidence of any act or omission committed by Defendant Nancy

W. Devine which would establish a finding of fraud against her, and any evidence Plaintiffs submitted with respect to any acts of Donald M. Devine, Jr., did not establish the requisite elements of fraud by clear and convincing evidence. (Commissioner's Response to Decree of Reference Nos. 1 and 2.)

(5) Because Plaintiffs did not establish fraud against either Defendant, Defendants respectfully except to the Commissioner's ruling that Plaintiffs are entitled to rescission of the contract. (Commissioner's Response to Decree of Reference No. 3.)

(6) Defendants respectfully except to the Commissioner's award of monetary damages in the amount of $162,089.79 or, indeed, to any award of monetary damages. (Commissioner's Response to Decree of Reference No. 4.)

(7) Without acknowledging that Plaintiffs' fraud claim stated a cause of action against Defendants or that Plaintiffs proved fraud against either Defendant by clear and convincing evidence, Defendants respectfully except to the Commissioner's decision to award Plaintiffs relief by way of rescission and the Virginia Consumer Protection Act. These remedies are mutually exclusive, and the Commissioner recognized that Plaintiffs had "elected" the remedy of rescission. (Commissioner's Response to Decree of Reference No. 9.)

(8) Without acknowledging that Plaintiffs stated a legal claim under the VCPA, Defendants respectfully except to the Commissioner's ruling that Plaintiffs showed by clear and convincing evidence that Defendants' acts or omissions rose to the level of fraud which would constitute a violation of the VCPA. Plaintiffs did not submit any evidence of any acts or omissions committed by the Defendant Nancy W. Devine which would support an allegation of fraud committed by her, and any evidence Plaintiffs presented with respect to the Defendant Donald M. Devine, Jr., did not establish finding of fraud by clear and convincing evidence or, indeed, by any standard. (Commissioner's Response to Decree of Reference No. 10.)

(9) For the reasons set forth in Exceptions 7 and 8, the Defendants respectfully except to the Commissioner's ruling that Plaintiffs are entitled to their reasonable attorney's fees and costs. (Commissioner's Response to Decree of Reference No. 11.)

(10) For the reasons set forth in exceptions 7 through 9, Defendants respectfully except to the Commissioner's finding that Plaintiffs sustained any damages with respect to VCPA claim. Defendants further except to the Commissioner's decision to double the amount of damages he erroneously found. (Commissioner's Response to Decree of Reference No. 12.)

(11) Defendants respectfully except to the Commissioner's finding that the VCPA claim related back to the date of filing of the original Complaint. (Commissioner's Response to Decree of Reference No. 13.)

(12) Defendants respectfully except to the Commissioner's ruling that Plaintiffs were not barred from bringing their claims regarding their leaking windows when they failed to move for rescission upon discovery of the alleged cause of the leak. (Commissioner's Response to Decree of Reference No. 14.)

(13) Defendants respectfully except to any conclusions of law or findings of fact not previously expressly excepted to the extent that these conclusions of law or findings of fact are found in or were a necessary predicate to the Commissioner's Responses Defendants have excepted to.

### Analysis

Although the defendants filed the above thirteen exceptions to the Commissioner's conclusions of law and findings of fact, the defendants in their brief in support of their exceptions chose to argue the exceptions as falling into seven separate categories. The plaintiffs' briefs essentially responded in kind to this approach, and, thus, the Court will follow this *modus* in ruling on the exceptions.

### Common Law Misrepresentation (Actual Fraud)

The elements of common law actual fraud are (1) false misrepresentation, (2) of a material fact, (3) intentionally and knowingly made, (4) with the intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled. *Davis v. Marshall Homes*, 265 Va. 159, 165, 576 S.E.2d 504, 506 (2003). Fraud must be pleaded with particularity. *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 467 S.E.2d 778 (1996). The element of false misrepresentation may be satisfied by showing the failure of a duty to disclose a material fact where the concealing party

knows the other party is acting upon the assumption that the fact does not exist. *Van Deusen v. Snead*, 247 Va. 324, 328, 441 S.E.2d 207, 209 (1994).

Any claim of reliance upon a matter falsely represented is subject to the defense of *caveat emptor*. *Kuczmanski v. Gill*, 225 Va. 367, 302 S.E.2d 48 (1984); *Watson v. Avon Street Business Ctr., Inc.*, 226 Va. 614, 311 S.E.2d 795 (1984). This doctrine requires buyers of real estate to exercise ordinary care in inspecting the condition of the property rather than accepting the representations of a party "whose interest it is to misled" the purchasers. *Kuczmanski*, 225 Va. at 369. But, when the buyer obtains information that would "excite the suspicions of a reasonable prudent person" the buyer "must discover for himself the true condition of the premise" even if efforts at fraudulent concealment have been taken. *Armentrout v. French*, 220 Va. 458, 466, 258 S.E.2d 519 (1979).

*Caveat emptor* is itself subject to the doctrine of diversion. "*Caveat emptor* require[s] the purchaser to discover defects in the property which a reasonable inspection would have disclosed, unless the sellers did or said anything to `divert [the purchasers] from making the inquiries and examinations which a prudent man ought to make'." *Horner v. Ahern*, 207 Va. 860, 864, 153 S.E.2d 216 (1967). A review of *Armentrout, Watson, Horner*, and related cases illustrates that the diversion exception to *caveat emptor* has been found where sellers engaged in affirmative concealment by lying in response to direct questions or by direct acts to conceal the appearance, condition, or even smell which would have alerted the buyer to the problem. Silence alone may act to divert the attention of a person away from actions that would be regularly deemed prudent. But it has been long held in Virginia that "[a] concealment of facts, to afford a ground of rescission for fraud, must be a willful suppression of such facts in regard to the subject matter of a contract, which the party making it is bound to disclose." *Rison v. Newberry*, 90 Va. 513, 18 S.E. 916 (1894).

## First Category

In this exception, the defendants argue that plaintiffs have failed to allege or prove that defendants, their agent, Ms. Lemmon, or the promotional literature made any misrepresentation or even a statement regarding the sill. Without the allegation and proof of this misrepresentation, defendants say plaintiffs cannot prevail on a common law or statutory claim of fraud.

The claim of there being no allegation of misrepresentation was the subject of an earlier Demurrer which the Court overruled. The Court found that plaintiffs had sufficiently alleged the element of a concealment of a material fact knowing that the plaintiffs acted upon the assumption that the fact did not exist. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592 (1984). Concealment of a fact is equivalent to an assertion that the fact does not exist. *Van Deusen v. Snead*, 247 Va. 324, 441 S.E.2d 207 (1994).

The Commissioner found that all information in the promotional material was given to Ms. Lemmon by Mr. Devine, who testified that "absolutely" all information came from him. He also found that Mr. Devine expressly approved all promotional materials or, in the alternative, failed to go back and correct any misinformation contained in such materials that were sent to him after they had gone to publication. The promotional literature given to the plaintiffs contained statements that Rock Hall had been completely restored, that its foundation had been restored, and that Rock Hall was completely renovated and restored between 2004 and 2005 from the wood plank floors and molding to the porticos and from the brick foundations to the roof and chimney. The Commissioner found these were representations of present fact, not opinions. He found the promotional materials to be representations of the present quality and character of the property sufficient to support an action for fraud. *Tate v. Colony House Builders, Inc.*, 257 Va. 78, 508 S.E.2d 597 (1999). He also made a finding that the promotional material as a statement of fact was false as it related to the condition of the foundation and sill and, specifically, that re-pointing mortar joints in the brick foundation did not constitute a complete restoration of the foundation.

The Commissioner chose not to believe the testimony of Mr. Devine or his contractors, Shannon Swindell and Dan Beall, that they all knew nothing about the rotten sill or about the removal of the lower courses of old poplar siding and its replacement by two new courses of cedar siding. The Commissioner found by circumstantial evidence and by weighing credibility of witnesses that the defendant and his contractor agents did remove the lower courses and the corner boards and replaced them with new materials and then repainted. He found that the defendants learned of the condition of the sill during the period work was done from the summer of 2005 to December 2006. Donald Chamblee, a credible witness with no axe to grind, testified that, when Mr. Devine's men were working on the house, he saw the lower side boards removed and even saw one that was only held up on one end. Other evidence showed that all the old side boards were on the house when the defendants had the old aluminum siding removed as "an act of faith" while working on Rock Hall. A number of witnesses, whom the Commissioner found credible, including Bruce Stanley, Tom Brown, and William Knight, corroborated the recent vintage of the cedar siding and corner boards, the new type equipment used to fasten it and that the new sideboards fully concealed the badly deteriorated exterior part of the sill. Further, the three home inspection experts, Mr. Knight, Gordon Wilkins, and Meredith Carroll, all testified that the sill appeared sound when viewed from its visible interior side in the basement. It seemed compelling that, when the sill was uncovered by plaintiffs, it was found that the cedar siding had to be attached in one place with a "nailer" because the fastener holding on the new siding could find no footing in the rotten wood of the sill.

The Commissioner did rely upon circumstantial evidence to prove defendants prior knowledge of the condition of the sill and the defendants complicity in the placement of new siding and corner boards for the purpose of concealment of the true condition of these components from a purchaser. The Commissioner found evidence sufficient to support a deliberate act of concealment by the standard of clear and convincing evidence. Circuit courts in Virginia frequently give a jury instruction that circumstantial evidence alone may be sufficient to find a defendant guilty in a criminal case where the burden of proof is beyond a reasonable doubt.

The Commissioner could find on the evidence that old materials were removed and the new cedar siding and corner posts were put on by Mr. Devine or his agents who worked on Rock Hall between the summer of 2005 and December 2006. Notably, the two courses of new siding ran all the way around the house on the same level as the sill. The photographs showing the exterior sill indicate severe deterioration that, according to credible witnesses, had existed for decades. The outer part of the sill was rotted and, in some places, reduced to being almost completely gone. The evidence supports the Commissioner's finding that there was a concealment, it was known to the defendants, and its specific purpose was to allay a purchaser from seeing or learning the condition of the sill.

### Second Category

The defendants argue that any statement regarding the source of water damage in the living room cannot be the basis of misrepresentation for fraud because it was but an expression of an opinion, not a fact. Further, the defendants argue that the contract addendum added as a result of the home inspection by Mr. Knight imposed on the defendants a solely contractual obligation to determine the source of the water damage in the living room. They contend that, since the source of this duty was contractual, the statement about Ernesto, being the source of water damage, even if false, cannot be a fraud, but rises at the most to breach of contract. *Dunn Construction Co. v. Cloney*, 278 Va. 260, 682 S.E.2d 943 (2009).

The statements offered about the source of the moisture in the living room were made after the contract was signed on January 28, 2007. The Commissioner construed the attribution of the moisture to Ernesto as fraud to induce the performance of the contract the parties already had entered into. Paragraph 32 of the Second Amended Complaint so alleges. The plaintiffs have sued for rescission for both the misrepresentation about the source of the moisture in the living room ceiling and the concealment of the deteriorated condition of the sill.

The Commissioner found that the statement about the source of moisture was false, both because he did not accept Mr. Devine's testimony, layered as it was with inconsistencies about damage from Ernesto, and because, after the closing, the back living room wall and ceiling continued to leak

when it rained. This led to the plaintiffs' employing Mr. Brown to replace the windows and his finding that rain water had been getting inside long before Ernesto through openings in the exterior siding. Further, when plaintiffs later had to pull down the living room ceiling due to a burst pipe, extensive long standing water damage was revealed which could not have been caused by a single incident one year before related to Ernesto. Again the Commissioner chose to believe by circumstantial evidence and by significant weight of the evidence that the defendants knew of this condition because it was visible and obvious when the interior was gutted when defendants had it worked on and to conclude that Mr. Devine told Ms. Lemmon to make the false statement about Ernesto to divert the plaintiff's attention from the true cause of the water damage.

The Commissioner found that this misrepresentation was made to induce the plaintiffs under the addendum to the contract to drop the home inspection contingencies, as ultimately happened, and to proceed to closing. This misinformation relayed through Ms. Lemmon to plaintiffs' agent Ms. Pamela Struss was repeated in Struss's February 19, 2007, "repainting in the living room is finished . . . water was from Ernesto . . . windows were left open" email to the plaintiffs. The plaintiffs believed at the walk through on March 9, 2007, based on Mr. Devine's misrepresentation, that the source of moisture had been properly identified, cosmetically repaired, and repainted and signed off to that effect.

### Third Category

Here, the defendants exception to the Commissioner's Report is that the plaintiffs have failed to prove reliance because, having undertaken an investigation, they did not carry it through diligently to the end to discover what did cause water intrusion into the house or to discover the true condition of the sill.

The cases cited by the defendants, *Beck v. Smith*, 260 Va. 452, 538 S.E.2d 312 (2000) (claim of fraud failed because purchaser failed to search the title to see a recorded easement); *Harris v. Dunham*, 203 Va. 760, 127 S.E.2d 65 (1962) (no fraud because purchaser did not read the company's books available to him); *DeJarnette v. Thomas M. Brooks Lumber Co.*, 199 Va. 18, 97 S.E.2d 750 (1957) (claim of fraud based on misrepresentation of timber on land rejected because buyer could have gone on the property to inspect trees); and *Poe v. Voss*, 196 Va. 821, 86 S.E.2d 47 (1955) (purchasers twice inspected a cold house that was old and in need of repair, knew something was wrong with the furnace in the basement, and had a friend inspect it, held not to have a claim of fraud), all deal with conditions of or information about property that were open and accessible to the vendee and lack the element of concealment by the vendor. Even though the vendors in these cases made assurances to the vendee that were misleading or false, the

vendees all had open unobstructed means to ascertain the true condition of the property, but failed to do so.

The doctrine of *caveat emptor* requires buyers of real estate to exercise *ordinary care* in inspecting the condition of the property rather than accepting the representations of a party "whose interest it is to mislead" the purchasers. *Kuczmanski*, 225 Va. at 369. "*Caveat emptor* require[s] the purchaser to discover defects in the property which a *reasonable inspection* would have disclosed, unless the sellers did or said anything to `divert [the purchasers] from making the inquiries and examinations which a prudent man ought to make'." *Horner*, 207 Va. at 864. (emphasis added)

The Commissioner found that Knight conducted a reasonable home inspection of the defendants' house. This included his examination of the sill as it could be seen from the basement. Mr. Knight, as did defendants' experts, Mr. Wilkins and Mr. Carroll, followed the national inspection standards of the American Society of Home Inspectors (ASHI). All three experts testified that no destructive testing, meaning no pulling off of siding or wall cover, is appropriate for a home inspection conducted under ASHI standards. No credible testimony supported that Knight did anything short of a full reasonable inspection when he looked at the sill in the basement. Notwithstanding defendants' efforts to make an issue of the moisture in the basement and of the place on the interior sill where both Mr. Knight and the termite inspector Mr. Cox saw evidence of wood borers which were no longer active, the three home inspection experts agreed that the sill appeared sound by visual inspection from inside the basement. Additionally, Mr. Knight said he found nothing in his inspection that would have caused him to recommend to the plaintiffs that they not purchase the house.

The Commissioner could conclude that, under the evidence and the case authorities in Virginia, ordinary reasonable care was exercised by the plaintiffs' inspector in conducting his home inspection of Rock Hall.

### Fourth Category

The defendants argue in this exception that the Commissioner's finding that the plaintiffs elected the equitable remedy of rescission precluded them from any claim for money damages, either as part of the remedy of rescission or as a statutory right under the VCPA. See *Augusta Mutual Ins. Co. v. Mason*, 274 Va. 199, 645 S.E.2d 290 (2007).

Plaintiffs' counsel argues that the restriction on simultaneously pursuing the equitable remedy of rescission and the claim at law for money damages does not preclude the well-recognized authority of a chancellor in equity to grant a monetary award of consequential damages for the purpose of restoring to the extent possible an aggrieved plaintiff to the position such person would have been in had the fraud not occurred. We agree with this basic analysis, but will more fully address this exception below.

*Fifth Category*

In this exception, the defendants argue that the plaintiffs are statutorily precluded from resorting to the Virginia Consumer Protection Act because of preemption by another statute. They also argue that defendants are not a "supplier" as defined in the VCPA and the Act should not apply because our case involves a consumer to consumer sale.

Defendants argue first that the contract for the sale of Rock Hall is specifically excluded from the reach of the VCPA because § 59.1-199(A) excludes the Act's application to those transactions "any aspect of [which] is authorized under the laws or regulations of this Commonwealth." The defendants then argue that, under the Virginia Residential Property Disclosure Act ("VRPDA"), § 55-519 expressly authorizes the defendants to say what the condition of the real property was. The Commissioner resolved these issues in favor of the plaintiffs. The Court believes defendants' preemption argument does not absolve the defendants from application of the VCPA because fraud, misrepresentation, and concealment where proved vitiate a contract. Further, the Court believes the VRPDA does not constitute a preemption of consumer fraud under the VCPA.

Second, defendants argue that § 59.1-197 of the VCPA declares the intent of the Act as "this chapter shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Defendants argue they are not a supplier which § 59.1-198 defines as "a seller, lessor, or licensor who advertises, solicits, or engages in consumer transactions . . . ." Because this particular sale involved one transaction, the defendants argue they are not sellers who advertise, solicit, or engage in consumer transactions.

The Commissioner found in his Report that Devine, since 1987, had been a licensed real estate broker engaged in land subdivision and development particularly specializing in restoring historic commercial and residential property which he had done extensively in the Town of Leesburg. The Contract of Purchase itself provided for the land defendants had listed for sale to be subdivided into three lots, only one of which, the lot with the house on it, was sold to plaintiffs. The other two lots, both on the water, were retained by defendants. Further, Rock Hall was marketed by promotion of it being remodeled, modernized, renovated and restored — essentially a complete "do over" by Mr. Devine, who, by his qualifications, specialized in restoring old structures. The reason Mr. Devine was selling the house in December 2006 was to raise money to purchase a large tract in Westmoreland County for over $2,000,000 on which he intended to place a conservation easement, subdivide the land, and sell resulting tax credits. The Court thinks this sufficient to establish him as a "supplier" as defined in the VCPA.

### Sixth Category

In this exception to the Commissioner's Report, the defendants argue that the monetary damages sought by the plaintiffs from defendants for fraud for the sums plaintiffs spent on their mortgage interest, real estate taxes, insurance, and repairs are not recoverable because plaintiffs claim the wrong measure of damages.

The defendants argue that the correct measure for damages for injury to real estate is the "difference between the actual value of the property at the time the contract was made and the value that the property would have possessed had the representation been true." *Prospect Development Co. v. Bershader*, 258 Va. 75, 91, 515 S.E.2d 291 (1999). This suit is not an action to recover damages to real estate, but is an action for rescission. In actions for rescission, the chancellor may award consequential damages to restore plaintiffs as nearly as possible to the position that they would have been in had the fraud not been committed.

The Commissioner, in his letter dated February 4, 2010, Exhibit A to his Report, overruled defendants' Demurrer to the VCPA claim in the Amended Complaint, finding that, in the context of a rescission, consequential damages may be recovered.

### Seventh Category

In this exception to the Commissioner's Report, defendants argue that plaintiffs have failed to prove any case against Mrs. Devine. The Second Amended Complaint effectively alleges that collectively Mr. and Mrs. Devine jointly and severally committed fraud, misrepresentation, and concealment and are both liable to the plaintiffs.

Defendants argue that plaintiffs never specifically alleged any wrongful act by Mrs. Devine other than, perhaps, under an implied theory that Mrs. Devine committed all the alleged acts simultaneously with her husband. Mrs. Devine never testified. In their testimony at trial, neither the plaintiffs nor Mr. Devine nor any other witness made any specific reference to actions or omissions by Mrs. Devine. At most, the evidence showed that she signed the contract and other documents pertaining to the property, and, having been sued, she defended the case jointly with her husband. The defendants argue that none of this is a basis for any award against her.

The plaintiffs respond that it is sufficient to allege that Mr. and Mrs. Devine acted jointly. Further, they argue that with respect to Mrs. Devine's fraud, misrepresentation, and concealment, just as with Mr. Devine, they must rely on circumstantial evidence of her guilty knowledge, and that, without reliance on circumstantial evidence, absent a confession, fraud could never be proved.

The plaintiffs further argue that the Commissioner must have thought that Mrs. Devine's knowledge and participation was concurrent with her

husband because the Commissioner repeatedly refers to "defendants" in the plural and to their acts in the plural possessive. Because of Mr. and Mrs. Devine's occasional joint occupancy of the house, plaintiffs contend the Commissioner must have concluded that what applied to Mr. Devine must be constructively applied equally to her. The problem is the Commissioner makes no findings about Mrs. Devine individually nor, in his Report, does he attribute fraud, misrepresentation, or concealment to her. It can be said of Mrs. Devine, however, that, as a co-owner of Rock Hall, she reaped the benefit of its sale to the plaintiffs at a price in excess of $200,000 over what she and her husband paid for the property.

### Circuit Court Determination of the Commissioner's Findings of Fact and Conclusions of Law

It is incumbent upon the Court to review the findings and recommendations of the Commissioner to determine whether his factual findings are supported by clear and convincing evidence and whether he has correctly applied applicable principles of law.

The Court here determines that there was sufficient evidence for the Commissioner to make the legal conclusion that the plaintiffs were induced to enter the contract to purchase Rock Hall on the false material statement that the house had been completely restored from foundation to roof when the defendants otherwise knew the true condition of the sill which they had concealed with new siding and by the placement of new corner boards.

The Court finds that the Commissioner had sufficient evidence to properly conclude that, after the plaintiffs had entered the contract and had the home inspection showing the water stains and mold on the living room ceiling and walls, they were fraudulently induced to perform the contract by Mr. Devine's false material misrepresentation about the cause of the water stains and the condition of the walls and ceiling.

The Court also determines that the Commissioner was correct on the law and evidence in rejecting the defendants' claim that *caveat emptor* barred recovery by the plaintiffs.

The Court also finds that the Commissioner did not err in making a monetary award where plaintiffs elected and received rescission of their contract where the ordered payment was limited to the purpose of restoring to the extent possible the plaintiffs to the position they were in before the fraud.

The Court also finds under the law and evidence that the Commissioner did not err in applying the VCPA to double the amount of damages by finding that the defendants were a "supplier" and that the provisions in the VRDPA do not block application of the VCPA in this case.

The Court finds that the Commissioner was correct in finding that monetary damages may be awarded in connection with rescission in order to restore plaintiffs to their pre-fraud position and agrees that his award with respect to mortgage interest, real estate taxes, and insurance was

proper. The Court differs, however, with the Commissioner with respect to awarding as consequential damages money spent on replacing the windows and door in the house. Mr. Knight, noting that the window frames were warped and let in air, found the condition of the windows to be marginal, requiring immediate maintenance and, additionally, indicated they would be due for replacement within five years. Water did enter the house due to the conditions Mr. Knight noted. Rescission is an extraordinary remedy which abrogates or annuls the contract and must be asserted promptly or it is lost. Despite the fact that the plaintiffs considered themselves defrauded, they decided not to seek rescission, deciding instead to replace the windows at their own cost and just go on with their lives. By paying $27,970.38 to replace the windows, the plaintiffs changed the respective positions of the parties. Although they claim the right of rescission in this suit for fraud concerning the source of water that damaged the living room, they should not now be able to claim the cost of all new windows as consequential damage to the defendants' fraud. They are now limited to claiming only actual damages for window replacement, a claim they no longer make in this suit. Additionally, because Mr. Knight's report found the condition of the windows to be marginal, it would be inequitable to impose the window repair costs as a consequential damage and then double it. The Court determines that the damages awarded should contain nothing for the replacement of windows and door.

Finally, the Court finds that it would be fair and equitable to require Mrs. Devine to be responsible jointly and severally with her husband for the repayment of the purchase price of the plaintiffs. By the rescission, she is to get back Rock Hall titled as it was previously in the names of Donald and Nancy Devine as tenants by the entireties with the right of survivorship. But the Court also finds that, in equity, Mrs. Devine should not be held liable for consequential damages, including double damage imposed pursuant to the VCPA, for the fraud, misrepresentation, and concealment which the Commissioner appropriately attributes to her husband.

## Conclusion

Accordingly, for the reasons herein stated and the Court, seeing no other findings of fact or conclusions of law that were improperly made by the Commissioner, rules with respect to the Commissioner's recommendations that relief shall be awarded as follows.

## A. *Rescission*

The purchase by the plaintiffs of Rock Hall from the defendants under the contract subject to this suit shall be and the same hereby is rescinded. The defendants shall refund to the plaintiffs their purchase price of $590,000 with interest from the date of closing March 9, 2007, until fully paid, and,

upon receipt of such refund, plaintiffs, Charles Z. Buki and Kimberly A. Marsho, shall re-convey the property to Donald W. Devine, Jr., and Nancy W. Devine, husband and wife, as tenants by the entireties with the right of survivorship as at common law free and clear of all liens.

## B. *Damages*

Having been proven by the evidence, plaintiffs shall have judgment against Donald W. Devine, Jr., for the following consequential damages resulting from their purchase of Rock Hall:

$106,936.00: interest on first deed of trust
17,667.00: interest on second deed of trust
4,301.41: property insurance
6,225.00: real estate taxes

Total: $135,129.41.

*Damages Pursuant to VCPA*: Pursuant to the findings of the Commissioner in his Report the Court affirms the finding that plaintiffs are entitled to double their award of consequential damages against Donald Devine to twice the amount of such damages, $270,258.82 with interest from the date of this judgment until paid in full.

## C. *Attorney's Fees*

For the reasons stated in the Commissioner's Report, the Court finds an award of attorney's fees under the VCPA against Donald Devine is properly warranted, and the Court affirms the Commissioner's findings on the appropriateness and the reasonableness of attorney's fees charged by plaintiffs' counsel and awards attorney's fees and costs as found by the Commissioner as follows:

$88,914.31: attorney's fees
233.00: court costs
2,905.00: expert witness fees
6,523.35: court reporter's fees

Total: $98,575.66.

Finally, for the purpose of the record in this proceeding, the Court makes the following findings with respect to the Commissioner's responses to the questions referred to him by the Court, which are set forth at the end of the Commissioner's Report:

The Court affirms the Commissioner's responses to questions 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, and 13.

The Court affirms the Commissioner's response to question 4, except the monetary award for consequential damage is reduced to $135,129.41 against Donald Devine only.

The Court affirms the Commissioner's response to question 12, except as the result of reducing the amount of actual damages to $135,129.41, the doubling of such damages is reduced to $270,258.82 against Donald Devine only.

The Court overrules the Commissioner's response to question 14 solely on the basis of having found that consequential damages relating to window replacement should not be allowed for the reasons stated by the Court.

## August 23, 2013

This Court issued an opinion letter on March 8, 2013, ruling on defendants' exceptions to the Report of the Commissioner in Chancery Carl F. Bowmer made pursuant to this Court's Decree of Reference. As directed by the letter, Mr. Bugg prepared a Final Order which was endorsed by all counsel except for Mr. Mains, who filed a 24 page Motion to Reconsider on behalf of the defendants. Mr. Bugg, on behalf of the plaintiffs, filed a 28 page Response, and Mr. Mains filed a twelve-page Rebuttal Brief. The Court heard oral arguments on the defendants' Motion on June 11, 2013.

The issues in this case have been extensively argued and ruled upon by the Court. Nevertheless, in the interest of addressing certain matters that Mr. Mains has argued should be reconsidered, the Court will address the following points raised by the motion filed.

(1) Since the Court found that the Commissioner made no finding of fraud on the part of Mrs. Devine:

(a) It was error for the Court to require her along with Mr. Devine to refund the purchase price in the rescission of the sale of Rock Hall; and

(b) The allegation of joint fraud by both defendants in the Second Amended Complaint is fatal to the claim of rescission.

(2) The award of double damages against Mr. Devine pursuant to the Virginia Consumer Protection Act (VCPA) is error because the claim in Count Two did not specify damages as part of this claim.

(3) The Virginia Supreme Court's decision in *Turner v. Bay*, Va. S. Ct. Record No. 101239, 2010 Va. LEXIS 246 (July 2011), by its application of the doctrine of *caveat emptor* precludes the finding of any fraud that would support rescission of the contract.

Mr. Mains has made additional arguments claiming errors in the Commissioner's findings of law and fact which this Court has previously affirmed and which it declines to elucidate further in this letter.

The first point considered concerns what the Court is able to do with regard to Mrs. Devine's interest in the real estate which she sold and deeded with her husband to the plaintiffs who seek to rescind the contract of sale.

The Court recognizes that a personal claim or judgment against one spouse does not expose the property of the other spouse to a liability for such claim or judgment. This was the situation in *Hurst v. Williams,* 157 Va. 124, 160 S.E. 24 (1931), where the husband committed fraud by representing to a lender that he owned numerous land holdings which in fact he had conveyed three years earlier to his wife. To secure the loan, the wife, at her husband's request, gave the lender a deed of trust on one of the properties she solely owned. Mrs. Hurst covenanted in her deed of trust that the property was conveyed "free from all encumbrances." In fact the property was subject to a prior deed of trust that Mrs. Hurst executed and recorded three months earlier. In the initial complaint, this was alleged as a ground of fraud against Mrs. Hurst. In the course of litigation, however, the obligation of the prior deed of trust was paid off and its lien was released on the record. The subsequent deed of trust given by the wife to secure husband's loan thus became a first lien on the property free of all encumbrances. The trial court entered judgment jointly against both Mr. and Mrs. Hurst for the unpaid balance of the loan, rescinded wife's deed of trust securing the loan and directed that her property be sold to satisfy the judgment. Upon noting that there was no evidence that Mrs. Hurst participated in or received benefit from or possessed knowledge of her husband's fraudulent acts, the Supreme Court reversed the trial court holding that since there was no personal liability against the wife for the loan balance, the wife's property other than that subject to her deed of trust could not be reached by the husband's lender. Stated otherwise, the wife had no personal liability for the judgment against her husband solely by reason of their marriage. Additionally, because no one challenged the prior conveyance of Mr. Hurst's land holdings to his wife or attacked the validity of the wife's previous land sales or execution of other deeds of trust on such properties, the Supreme Court held there was no evidence to support a claim of fraud on the part of Mrs. Hurst.

Although Mrs. Hurst gave a deed of trust, she did not participate in or receive proceeds from the loan. *Hurst* did not involve a buyer's claim for rescission of sale of real estate jointly owned by husband and wife based on a procurement of a contract of sale by fraudulent misrepresentation. In contrast, Mrs. Devine jointly with her husband was deeded Rock Hall, listed it for sale, contracted for its sale, and executed the deed. Mrs. Devine was a joint recipient of the sales proceeds with her husband. The *Hurst* case was essentially a money judgment against the husband only on a defaulted note that the wife had secured by a deed of trust on her own property. In reversing the rescission of the deed of trust, the Supreme Court effectively allowed foreclosure, but this did not make Mrs. Hurst personally liable on the loan nor did it subject other property owned by her to liability for its satisfaction.

Mr. and Mrs. Devine owned Rock Hall as husband and wife as tenants by the entireties. As stated in cases cited by the defendants, such as *Klaiber v.*

*Freemason Assocs.*, 266 Va. 478, 587 S.E.2d 555 (2003); *Rogers v. Rogers*, 257 Va. 323, 512 S.E.2d 821 (1999); and *Vasilion v. Vasilion*, 192 Va. 735, 66 S.E.2d 599 (1951), property owned by husband and wife as tenants by the entireties is liable for claims or judgments jointly against both spouses, but is immune from claims or judgments against either the husband or wife alone. In the law of Virginia, where rescission has been sought for fraud in the inducement of sale of property so owned, the Court has found no authority precluding rescission based upon one tenant by the entirety being guilty of fraud and the other innocent. An estate of tenancy by the entireties is premised upon a single indivisible legal unit of ownership comprised of a husband and wife. Contracts, listing agreements, and deeds for the sale of properties so owned are not valid or enforceable in the first place unless entered into by both spouses.

Ours is not a case where the plaintiffs seek recovery of monetary damages against husband and wife sellers for fraud, rather the plaintiffs seek by the equitable remedy of rescission to return the parties to their former positions prior to the sale of Rock Hall. Mr. and Mrs. Devine jointly listed Rock Hall for sale with the real estate agent who was the point of contact with the plaintiffs. When the plaintiffs spoke with the sellers' agent about the published promotional materials and the condition of the house, they were entitled to rely upon the agent speaking for both Mr. and Mrs. Devine.

The defendants also argue on reconsideration that, because fraud was pleaded against both Mr. and Mrs. Devine, the Court lost equitable jurisdiction where fraud was proved against the husband but not against the wife. The Court believes that, for the reasons stated above and in the Court's prior opinion letter, the Court has equitable jurisdiction as part of the ordered rescission to direct that Mr. and Mrs. Devine make joint restitution of the sales proceeds they received and that plaintiffs re-convey Rock Hall to Mr. and Mrs. Devine as tenants by the entireties, the same ownership they had when the contract of sale was entered into.

The Court does not believe that the authorities argued by the defendants deprive this Court of jurisdiction because the allegation of fraud was made against both Mr. and Mrs. Devine. We believe upon reconsidering all the arguments that the Court has the equity jurisdiction to order rescission and, accordingly, the Court declines to change its prior decisions in regard to this matter.

The second point which the Court reconsiders is the argument that the claim under the VCPA in Count Two of the Complaint must fail because it did not allege specific damages.

In the course of this litigation, the plaintiffs dropped their claim of damages in Count Three, electing to seek only rescission. The Court agrees that, by such election, the plaintiffs abandoned the claim of any benefit under the VCPA based on damage claims under Count Three.

The defendants additionally argue that plaintiffs have failed to plead in Count Two or prove a VCPA claim to which they are entitled pursuant to rescission under Count One. In ¶ 40 of Count One of the Second Amended Complaint, the plaintiffs specifically alleged a claim of rescission of the purchase of the property including recovery of the purchase price of $590,000, recovery of $30,000 incurred in connection with leaks in the wall and ceiling in the living room, and recovery of $80,000 for costs, including closing and loan costs, plus their reasonable attorney's fees. The general prayer for relief in the Second Amended Complaint seeks for rescission in Count One, recovery of $680,000 damages, and $350,000 punitive damages. The prayer also generally sought recovery of reasonable attorney's fees incurred by the plaintiffs.

In ¶ 41 of Count Two of the Second Amended Complaint, the plaintiffs incorporated all allegations in Count One except for ¶ 40 and allege violation of the VCPA entitling them to three times the actual damages they sustained plus reasonable attorney's fees as determined at trial. The general prayer for relief seeks pursuant to Count Two an award under the VCPA of three times actual damages plus attorney's fees. Nowhere in Count Two or in the general prayer do the plaintiffs allege the specific amount of the treble damages. The defendants again argue that the failure of Count Two to state a specific amount of treble damages is fatal to the VCPA claim.

The particular issue is what damage award is subject to being trebled by the VCPA as alleged in Count Two. Because the claim in Count Three of the Second Amended Complaint for compensatory damages for fraud totaling $110,000, $30,000 for replacement windows, and $80,000 for repair of the house, and for punitive damages for the defendants' misconduct was relinquished, the Court disallowed the claim the Commissioner awarded for replacement of the windows. The plaintiffs are not entitled to treble any damages claimed in Count Three.

The plaintiffs elected to proceed on the more difficult remedy of rescission in Count One. Paragraph 41 in Count Two incorporates all allegations in ¶¶ 28 through 39 in Count One, but not the allegations of items of monetary recovery, including recovery for cost of repairs, claimed in ¶ 40. The only meaning the Court can ascertain from pleading in this fashion is that the claim in Count Two relates to trebling the actual damages that the plaintiffs specifically pleaded in Count Three. In the general prayer for relief in the Second Amended Complaint, compensatory damages of $110,000 and punitive damages of $350,000 for Count Three are pleaded in the alternative to any award of financial recovery for rescission pursuant to Count One. The issue then is whether the VCPA claim in Count Two as pleaded can be utilized to treble any monetary recovery awarded as an incident to rescission.

In large part, the analysis here focuses on the equitable principles which underpin rescission. Compensatory damages awarded for negligence,

contract, or fraud are relatively bread and butter issues in court cases. As Mr. Mains has expounded at length, such claims are based upon there being a duty owed, a breach of such duty, and damages resulting therefrom. Each element must be pleaded. On the other hand, rescission is a much rarer remedy awarded in the discretion of the Court on a case by case basis. Rescission rests upon the principle that the misconduct or misrepresentation by one party so undermines the bargained for expectation of the contract that the other party would never have entered into the agreement in the first place and that the facts allow and fundamental fairness requires that the contract should be held to be of no force and effect. The extraordinary relief of rescission is achieved by the Court's ordering that the parties be restored to the positions they were in before the sale of the property.

The defendants have taken exception to the determination of the Commissioner, affirmed by the Court, that the VCPA is applicable insofar as it doubled the $135,129.41 recovery against Donald W. Devine, Jr., for rescission to $270,258.82. The Court has no doubt that Commissioner Bowmer properly did find fraud based upon the evidence he heard and the exhibits admitted in the course of the two day trial. Additionally, the Court reaffirms that rescission is a proper form of relief which the Court may in its discretion grant the plaintiffs.

What concerns the Court is that rescission depends upon a carefully crafted scheme to restore the parties to the pre-contract *status quo*. The application of the VCPA for whatever other reason it may be employed, runs in the Court's opinion counter to restoration of the *status quo*. Upon consideration of all of the arguments made to the Court, the Court declines to apply the VCPA to double "damages" to restore the parties to their prior positions. The Court agrees that the amount of prior restitution, outside of reasonable attorney's fees, fees, and costs incident to trial, should be capped at $80,000, the amount of damage alleged in ¶ 40 of Count One. Finally, the Court, in lieu of awarding attorney's fees based on the VCPA, awards based on the fraud proven against Mr. Devine the reasonable amount of attorney's fees found by the Commissioner as a consequential expense incurred in the suit for rescission, without which the plaintiffs would have received no relief.

The third point considered by the Court is the defendants' argument made with respect to the decision in *Turner v. Bay*, Va. S. Ct. Record No. 101239, 2010 Va. Lexis 246 (July 2011). It is argued that this opinion is conclusive as to the application of the doctrine of *caveat emptor* precluding the fraud claim which is a predicate to the rescission. In *Bay*, the Supreme Court found upon consideration of the record that there had been error by the Circuit Court in rescinding a contract of sale and ordering compensatory restitution on the basis of fraud for the defendants' actively concealing mold located in the house. The opinion applies the same body of case law set out in this Court's opinion letter of March 8, 2013, under the heading Common Law Misrepresentation (Actual Fraud). The appellate record stated that

the buyer's home inspector found standing water and a mold line in the house's crawl space, notified the buyers of his discovery, informing them he could not finish his inspection until the standing water was remedied, and told them to call him when this had been done. The buyers did not do as they were advised. The cause for reversal was that, even given the sellers' concealment, the buyers in *Bay* obtained information alerting them to a problem requiring them to take further steps to ascertain the true condition and were charged with the knowledge they might have obtained by diligently pursuing the inquiry to the end. The plaintiffs in our case were not informed of any problem with the sill by their home inspector, who told them that there was nothing about his inspection that would cause him to recommend they not purchase the house. Additionally, the home inspector in our case did not advise the plaintiffs that they needed to do something and then call him to come back so he could complete his inspection. Nothing in *Bay* persuades the Court to make any different analysis of the issue of *caveat emptor*.

The Court, except for the specific changes indicated herein, reaffirms the Conclusion stated in its opinion letter of March 8, 2013, as follows:

A. Rescission: No changes.

B. Damages: The plaintiffs shall recover against Donald W. Devine, Jr., the following consequential recovery resulting from the plaintiffs purchase of Rock Hall, for interest on the first deed of trust, interest on the second deed of trust, property insurance, and real estate taxes, $80,000.00, with interest from the date of this judgment until paid in full. The Court, for the reasons expressed herein, declines to double the award herein pursuant to the VCPA.

C. Attorney's Fees and Costs: For attorney's fees, court costs, expert witnesses, and court reporter fees: $98,575.63 against Donald W. Devine, Jr. This award is given based on fraud and not pursuant to the VCPA.

Except as modified herein, the Court reaffirms the findings that it made at the end of its March 8, 2013, opinion letter with respect to the Commissioner's responses to the questions referred to him by the Court, which are set forth at the end of the Commissioner's Report.

October 25, 2013

After this Court's opinion letter of August 23, 2013, the Court received Mr. Bugg's letter dated August 27, 2013, Mr. Mains' letter dated August 28, 2013, Mr. Stuart's letter dated September 9, 2013, and Mr. Bugg's letter dated September 10, 2013. The subject of Mr. Bugg's correspondence was (1) the Court's ruling that capped the amount of recoverable restitution for rescission at $80,000 because this was the amount alleged in ¶ 40 of Count One of the Second Amended Complaint, (2) the Order entered by Commissioner Bowmer on July 28, 2010, that increased the $80,000 *ad*

*damnum* to $150,000, and (3) a request for clarification of the date from which interest would run on such restitution.

Mr. Mains response to Mr. Bugg's letter requested time for him to confer with Mr. Stuart, who was on vacation, so that they might reply on behalf of the Devines. The Court's August 23, 2013, opinion letter stated that the Court would not further reconsider its rulings in this case. Mr. Mains characterized Mr. Bugg's letter as a Motion to Reconsider and indicated that any action taken in response was an opportunity for the Court to reopen consideration of additional relief for the defendants.

Mr. Stuart's letter of September 9, 2013, indeed readdressed from the defendants' side the question of the *ad damnum* that was increased by the Commissioner's Order. This letter continued by addressing Mr. Bugg's question about the date of the running of interest on the amount awarded on the *ad damnum* for restitution related to rescission, noting that the Court's letter stated that judgment interest would run from the date of entry of the final decree. Thereafter, Mr. Stuart's letter essentially reopened arguments previously made on interest on the purchase price which the Commissioner ruled and the Court approved should be reimbursed by the defendants in exchange for the plaintiffs' conveying the property back to the defendants.

This Court, on November 24, 2009, entered a Decree of Reference referring the case to Carl F. Bowmer as Commissioner in Chancery. On the same date, the Court entered a second order also referring the defendants' Demurrer and Plea in Bar to the Commissioner. These orders were endorsed as objected to by Jan Smith, who was then counsel for the defendants. Because other questions arose thereafter regarding what the Commissioner could or could not do, the Court entered another Order on May 3, 2010, authorizing the Commissioner to rule on any matters relating to the Decree of Reference brought up subsequent to the Orders of November 24, 2009. This last Order was endorsed without objection by Mr. O'Brien, who was then the defendants' attorney. On May 4, 2010, Mr. Bugg filed the plaintiffs' motion to increase the *ad damnum* for the amount sought for closing costs, loan costs, and other costs set forth in ¶ 40 of Count One of the Second Amended Complaint from $80,000 to $150,000 with a certificate attached that the motion had been mailed that day to Mr. O'Brien.

The Commissioner's hearing was scheduled for a two day hearing on July 28 and 29, 2010. On July 20, 2010, Mr. Bugg filed a Notice that he would seek a ruling on the motion to increase the *ad damnum* at the Commissioner's hearing. The Court has reviewed the applicable portions of the transcript of the Commissioner's hearing relating to the motion in question. The Commissioner properly granted the motion and entered an Order on July 28, 2010, increasing the *ad damnum* as requested.

The Commissioner's Order appears to superimpose the handwritten dates "28" and "29" of July 2010 on top of one another. According to the transcripts, the motion was brought up by Mr. Bugg on the first day of the

hearing, the Commissioner indicated he would enter the Order, however, Mr. O'Brien would not endorse the Order because he wanted to see the plaintiffs' mortgages. The mortgages were produced the first day. On the second day, after plaintiff rested, Mr. Bugg requested entry of the Order, and Mr. O'Brien would not endorse it this time because he wanted to see the promissory notes. The Commissioner then entered the Order which Mr. O'Brien endorsed as objected to.

The Court must differ with some of the interpretations stated in the letter of September 9, 2013, written by Mr. Stuart on behalf of himself and Mr. Mains. The plaintiffs' motion to increase the *ad damnum* was made four months prior to the Commissioner's hearing, not on "the day of trial." Also, the Commissioner's Order was entered during the hearing not "eight (8) days after the hearing."

The Order entered by the Commissioner on July 28, 2010, is a proper Order of this Court filed, indexed, and recorded in the Order Books in the Clerk's Office. Throughout this litigation, the Court has maintained its own tabbed indexed ring binders containing in chronological order copies of the pleadings, motions, briefs, and orders in this case. Because this case moved from the Court to the Commissioner and then back to the Court again, a copy of the Commissioner's Order entered July 28, 2010, was inadvertently not put in a binder. Despite its own admonition not to reconsider its rulings, the Court must correct its error. Consistent with this analysis, the award of $135,129.41 of the Court's opinion letter of March 8, 2013, an amount well within the increased *ad damnum* of $150,000 for closing costs, loan costs, and other costs as set forth in the Commissioner's Order, is affirmed. The Court, in doing so, does not vary from its reasoning that the overall cap of the *ad damnum* is governed by the pleadings.

As to the date from which interest shall run, the plaintiffs concede that they did not ask for pre-judgment interest in their complaint. With respect to the Court's language in the opinion letters that restitution is to be "with interest from the date of this judgment," such language was intended to refer to the date of entry of a final order reflecting the decision in the Court's opinion letters.

The Court declines to go into the further argument made by the defendants on pages 2, 3, and 4 of Mr. Stuart's letter of September 9, 2013.

As corrected and clarified herein, Mr. Bugg shall prepare a sketch Order reflecting the judgment of the Court. Such Order shall be endorsed by all counsel of record. The Court duly notes all exceptions as may appear of record. Once endorsed by counsel, the Order shall be forwarded to the Clerk for entry by the Court. The Order shall be final.