# Staunton

## J. C. HURST AND B. M. HURST v. J. M. WILLIAMS.

### September 17, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*W. J. Henson,* for the appellants.

*Dillard, Moomaw & Dillard,* for the appellee.

PRENTIS, C. J., delivered the opinion of the court.

Prior to July 9, 1923, J. C. Hurst had the legal title to a number of different parcels of real estate, consisting of lots with buildings thereon and vacant lots in the city of Roanoke and in the county of Roanoke, which on that date he conveyed to his wife, B. M. Hurst. There has been no attack upon that conveyance by creditors, and since then B. M. Hurst has been the apparent owner, has made sales thereof and executed many deeds of trust thereon, and so far as this record shows the validity of none of these transactions and conveyances has been questioned.

This litigation arose out of these occurrences: In December, 1926, J. C. Hurst approached J. M. Williams for a loan of $3,000.00. It was agreed between these two that the loan should be secured by a deed of trust on a house and lot then shown to the lender, which was owned by B. M. Hurst, the wife of the borrower. At the request of her husband, J. C. Hurst, she, on December 17, 1926, executed a deed of trust thereon securing his note for $3,000.00, payable to Williams five years after its date, and ten notes for $90.00 each, payable at intervals of six months during the five years, which represented six per cent interest upon the principal of the note for $3,000.00. In that deed, after concluding the description of the lot, there is this language, "which property is free from all encumbrances."

The interest notes for $90.00 each have been paid except the last three—that is, those maturing forty-eight, fifty-four and sixty months after their date.

Williams testified that before he made the loan he was told by J. C. Hurst that this deed of trust would constitute the first lien upon the property, but Williams discovered a short time before October 16, 1930, that this was a misrepresentation, and that there was a prior deed of trust upon the property to secure a debt of $2,000.00 which had been executed and recorded about three months before his deed. He thereupon, on October 16, 1930, filed his bill, alleging the covenant in the deed that the property was free from all encumbrances, and prayed that B. M. Hurst be required to save him harmless and make that covenant good. On the next day he filed an amended bill, in which he alleges that J. C. Hurst represented to him that he was the owner of a large number of parcels of land in the city of Roanoke and offered to secure the debt on his property; that Hurst did not inform him (Williams) that the property was in the name of his wife, B. M. Hurst, but represented

that he (J. C. Hurst) was the owner, and avers that B. M. Hurst is a trustee holding the legal title for J. C. Hurst in all the land in her name in the city and the county of Roanoke, and that she holds the legal title thereto for his benefit. He again recites the covenant that the land is free of all encumbrances, and again alleges the execution of the deed of trust for $2,000.00 which constituted a prior lien thereon. He then charges that all of the property standing in the name of B. M. Hurst is liable for the payment of his debt of $3,000.00 and should be subjected to sale to satisfy his debt by reason of the false and fraudulent representation contained in the deed; and then this allegation seems to be confused with allegations of misrepresentations made by J. C. Hurst. Expressed differently, there is no allegation in this bill that B. M. Hurst did anything except execute the deed containing the covenant that the land was free from all encumbrances.

In the meantime, B. M. Hurst paid off the lien which the prior deed of trust for $2,000.00 had created, and that lien was properly and promptly released on the record; so that it appears that the original complaint has been satisfied and that the cause of action stated in the original bill no longer exists because the complainant, Williams, now in fact has the first lien upon the lot conveyed, free of all encumbrances.

Thereafter a second amended bill was filed which shows that the prior lien of $2,000.00 has been properly released, and this bill contains a long argumentative statement alleging that B. M. Hurst participated in the fraud. The substance of this bill seems to be that these facts, which we have recited, are sufficient to support the claim that there was a joint fraud committed by B. M. Hurst and her husband, J. C. Hurst, whereby they obtained from the complainant $2,850.00. The difference between the amount of the note secured by the deed of trust, $3,000.00, and the

$2,850.00 is explained by the fact that Williams charged Hurst $150.00 for brokerage. He prays for the cancellation of the contract, and that all of the property of B. M. Hurst be subjected to his claim for the return of $2,850.00 and interest to him.

The court overruled demurrers to all three of the bills, but inasmuch as the averments of the last bill are doubtless sufficient to maintain the cause as a bill for the rescission of a contract alleged to have been induced by fraudulent misrepresentations of facts, certainly as against J. C. Hurst, and because the case can be disposed of upon the merits, we think it unnecessary to say more than that the demurrers to the first two bills should have been sus- tained, because in substance they merely alleged a breach of the covenant that the land was free from encumbrances, and the remedy for such a wrong is at law for damages, and not in equity. The second amended bill alleged joint fraud and prayed for cancellation and the demurrer thereto was properly overruled. We should not encumber this opinion with the reiterations and details as to the facts, for the reasons which we think apparent.

From the testimony for the complainant it appears that Hurst showed him a number of parcels of real estate speaking of them as his own, and among other things that he stated that the particular property upon which it was finally agreed that the deed of trust should be given was free from encumbrances, and that it was unnecessary to examine the title because he (Hurst) had recently had it examined; that he (Williams) made no inquiry because he was under the impression that Hurst was a wealthy man, and that he loaned the money by reason of the trust and confidence which he reposed in J. C. Hurst, and made no examination of the records. We may remark, in passing, that the pathway of the impecunious borrower, as Hurst certainly was, is not generally so easy, nor are the lenders of

money generally so complaisant. It may be concluded, however, from the evidence for the complainant, Williams (which was in several particulars denied by Hurst), that he has proved that he was deceived by the statements of J. C. Hurst, and loaned his money only because of the misrepresentations as to the facts, specifically as to his ownership of the property, and was deceived by the fraud thus committed against him, and is entitled to have the transaction rescinded.

It is, however, shown that J. C. Hurst received the entire consideration, and there is an absolute failure to show that B. M. Hurst, the wife of J. C. Hurst, participated in the alleged fraud or had any knowledge or information as to these misstatements of her husband—indeed, it is shown that she never at any time had an interview with the complainant, Williams. All that she did was to pledge, at her husband's request, the property to which she has legal title, and apparently the beneficial title, as security for her husband's debt to Williams. Of course, it must be conceded by all that the mere allegations of fraud against B. M. Hurst, however vigorously made and often repeated, do not establish fraud, and that the burden of proving it rests upon him who alleges it.

Notwithstanding this state of the evidence, the trial court held that B. M. Hurst participated in the fraud, entered a decree rescinding and cancelling the deed of trust, declaring that "the same is hereby rescinded and cancelled and declared to be null and void, and of no effect, save as to the amount of recovery of the plaintiff in this cause as hereinafter set forth." The court also holds "that by means of material fraudulent representations established by the evidence, of which J. M. Williams was ignorant and upon which he relied, J. C. Hurst and B. M. Hurst, jointly, obtained from said J. M. Williams the sum of $2,850.00 as set out in said bills, and that J. C. Hurst and B. M. Hurst

are due J. M. Williams the sum of $2,850.00 with interest thereon at six per cent per annum from August 24, 1930, the date to which interest has been paid on said sum, the court doth adjudge, order and decree that the said J. M. Williams do have and recover of J. C. Hurst and B. M. Hurst the sum of $2,850.00 with interest from August 24, 1930, together with his cost in this case expended, which said judgment the clerk of this court is hereby directed to place upon the Judgment Lien Docket of this court."

As has been already stated, the evidence, though unusual and in some particulars contradicted by J. C. Hurst, is doubtless sufficient to prove his fraud and deceit, but is entirely lacking to show that B. M. Hurst participated in the fraud in the remotest degree, or received the slightest benefit therefrom, or even had the slightest knowledge thereof. So that the decree must be reversed as to B. M. Hurst, for all that is shown in this case as to her participation in the fraud is that she is the wife of J. C. Hurst, and that she signed the deed of trust conveying the property for the purpose of securing this debt to J. M. Williams.

The decree directed that the property covered by the deed of trust should be sold in order to satisfy that judgment, and to this relief the complainant, Williams, doubtless is entitled. We take it, however, that as in most cases of cancellation by a court for fraud, the objective of the complainant is to better his position. For example, where the object, as it is in this case, is, to secure the return of money loaned, to make the recovery of the entire amount more certain. Here, however, should we reverse the decree against B. M. Hurst and leave it effective against J. C. Hurst, the complainant recovers a smaller sum, adjudged to be a lien upon the same property, than he would be entitled to had there been no cancellation. We assume that had the trial court indicated, as we have determined, that there could

be no personal judgment against B. M. Hurst and that only the property of B. M. Hurst covered by the deed of trust can be subjected in this suit by the complainant to his debt, his prayer for rescission would have been denied as partial and ineffective. He would then be free to enforce his lien for $3,000.00, first by a sale of the property covered by the deed of trust, and then to recover a judgment against J. C. Hurst for the amount, if any, still due on the debt.

Under the circumstances, in view of our holding that B. M. Hurst has incurred no personal liability to the complainant, and has only pledged the property covered by the deed of trust for its payment, our conclusion is to reverse the decree, and remand the case to the trial court for such decrees against J. C. Hurst as the complainant may be advised to take and as may be proper and in accordance with the views here expressed.

*Reversed and remanded.*