PRESENT: Lemons, C.J., Goodwyn, Millette, Mims, McClanahan, and
Powell, JJ., and Lacy, S.J.

DONALD M. DEVINE, JR.

OPINION BY
v.  Record No. 140301          JUSTICE CLEO E. POWELL
JANUARY 8, 2015
CHARLES Z. BUKI, ET AL.


FROM THE CIRCUIT COURT OF NORTHUMBERLAND COUNTY
Harry T. Taliaferro, III, Judge

Donald M. Devine, Jr. ("Donald") appeals the judgment of the trial court rescinding the sale of the property known as Rock Hall to Charles Z. Buki ("Buki") and Kimberly A. Marsho ("Marsho").  He further appeals the trial court's award of consequential damages and attorney's fees.  Buki and Marsho assign cross-error to the trial court's denial of their claim under the Virginia Consumer Protection Act ("VCPA"), Code § 59.1-196, et seq., and their request for attorney's fees.

I.  BACKGROUND

Rock Hall is a wood frame house that is more than 200 years old.  The main structure of the house is supported by a large wood beam (the "foundation sill") resting on a masonry wall.  In March, 2004, Rock Hall was bought by Acorn Properties, a company owned by Donald.  In January, 2005, Acorn Properties transferred ownership of Rock Hall to Donald and his wife, Nancy W. Devine ("Nancy").

Donald subsequently began the process of renovating and restoring Rock Hall. Donald performed some of the work by himself and hired contractors to do the rest. In June, 2005, Shannon Swindell ("Swindell") was hired by Donald to remove the aluminum siding and re-paint the original wooden siding found underneath. According to Swindell, all of the siding appeared to be old and there were no new boards on the bottom of the house. Donald also hired Danny Beall ("Beall") to perform a number of tasks, including rebuilding the front and rear porches; reframing, insulating and rehanging sheetrock on the interior walls; repainting the living room; installing three new bathrooms and a kitchen; and some masonry work. Beall did not do any work on the wooden siding or corner posts of Rock Hall.

In December, 2006, Donald decided to sell Rock Hall to generate the cash necessary to purchase another property. Donald listed Rock Hall for sale with Rebecca Lemmon ("Lemmon"), a local realtor. Lemmon, with Donald's input, created promotional literature that was given to potential buyers, including Buki and Marsho. The promotional literature stated:

- Rock Hall had been "completely restored;"

- Rock Hall's foundation had been restored;

- Rock Hall was "completely renovated and restored between 2004 and 2005 from the wood plank floors and molding to the portico, and from the brick foundations to the roof and chimney."

2

The promotional literature also cautioned that the information was provided by the seller and deemed accurate, but it was not guaranteed.

On January 22, 2007, Buki and Marsho signed a contract agreeing to purchase Rock Hall for $590,000 (the "Real Estate Contract"). The Real Estate Contract included a "Disclaimer Statement" which stated that the owners made no representations or warranties as to the condition of the property and the purchaser would be receiving the property "'as is' . . . with all defects which may exist, if any, except as otherwise provided in the real estate purchase contract."

On February 2, 2007, William Knight ("Knight"), a home inspector, inspected the property with Buki and Marsho present. He noticed that some of the window frames were warped, allowing air to enter. As a result, Knight determined that the windows and siding were only in "marginal" condition, meaning that they were "functional" but required "immediate maintenance" and likely would need to be replaced within five years. Additionally, he found a water stain and mold forming on the living room ceiling. Knight also noted some moisture damage in the basement and some evidence of boring insect damage to the rear sill. Overall, however, he "told [Buki and Marsho] that he found nothing that would cause him to tell a potential purchaser not to buy Rock Hall."

Due to Knight's report, Buki and Marsho had Jeffrey T. Cox, Sr. ("Cox"), perform a subsequent inspection on the property, focusing primarily on the insect damage. Cox also noted the moisture and insect damage in the basement. However, according to Cox, the termite damage was limited to one basement window and a baseboard. Cox stated that, based on what he could see at the time, there was no evidence of termite damage anywhere else in the house or that there was an active termite infestation in the home. Regarding the moisture damage, Cox stated that it was not out of the ordinary for that area.

On February 4, 2007, an addendum was added to the Real Estate Contract. In the addendum, Buki and Marsho requested a number of repairs based on the results of the home inspection. Referring to the stain on the living room ceiling, Buki and Marsho requested that Donald and Nancy "find [the] source of [the] moisture and repair/replace. Treat mold and paint/repair." Lemmon informed Buki and Marsho's agent that the stain on the living room ceiling was caused by a window being left open during Hurricane Ernesto, which struck the area on September 1, 2006. The stain was repaired and painted.

The real estate closing occurred on March 9, 2007. Shortly thereafter, Buki and Marsho noticed water leaking from the east wall and the east- and south-facing windows when there was wind-driven rain from the east or south. They also noticed water

4

leaking from the living room ceiling.  Buki and Marsho hired Tom Brown ("Brown") to install new windows.  Brown discovered mold and sheet rock damage around all of the windows on the east wall.  According to Brown, the damage was not from a single event, but likely had been on-going for some time. Additionally, Brown discovered that the exterior siding had significant cracks and recommended that it be replaced.  He recommended another contractor, Bruce Stanley ("Stanley").

On September 4, 2007, Brown and Stanley inspected the siding of Rock Hall.  They noticed that the lower courses of siding, as well as portions of the corner posts, had been replaced with new material.  After removing the lower courses, they discovered that the foundation sill and corner boards were substantially damaged by rot and termite damage.  As a result, the structural integrity of the house was significantly compromised.

On December 6, 2007, Buki and Marsho brought suit against Donald and Nancy.  Buki and Marsho alleged that Donald and Nancy fraudulently induced them to enter into the Real Estate Contract and to close on Rock Hall by misrepresenting and concealing the true condition of Rock Hall.  Initially, they only sought rescission of the Real Estate Contract or, in the alternative, compensatory damages for replacement of the windows and repairs

5

to the sill.  In their second amended complaint, they added a claim under the VCPA.

The trial court referred the matter to a commissioner in chancery.  After holding an evidentiary hearing, the commissioner found that Buki and Marsho had been fraudulently induced into entering the Real Estate Contract and closing on Rock Hall.  He further determined that Buki and Marsho were entitled to rescission of the Real Estate Contract and damages in the amount of $163,099.79, representing the cost of the replacement windows ($27,970.38), the interest Buki and Marsho paid on their first ($106,936) and second ($17,667) mortgages on the property, the property insurance expended by Buki and Marsho ($4,301.41), and the real estate taxes Buki and Marsho paid on the property ($6,225).  Finding that the fraud was a willful violation of the VCPA, the commissioner doubled the damages pursuant to Code § 59.1-204(A) and awarded attorney's fees and costs pursuant to Code § 59.1-204(B).  As the damages were doubled under the VCPA, the commissioner declined to award punitive damages.

Donald and Nancy filed several exceptions to the commissioner's report.  After considering the matter, the trial court determined that there was sufficient evidence to find that Donald had fraudulently induced Buki and Marsho to buy Rock Hall.  The trial court focused on the false statements in the

6

promotional literature, the concealment of the damage to the sill and misrepresentation as to the source of the living room ceiling stain.

However, the trial court also found that Buki and Marsho had failed to allege or prove that Nancy had committed any fraudulent acts. The trial court noted that there was no evidence that Nancy took any part in the fraud, aside from signing the Real Estate Contract and the other documents pertaining to the sale of Rock Hall. The trial court pointed out that the commissioner made no findings with regard to Nancy or attributed any fraud, misrepresentation or concealment to her. The trial court determined that, at most, Nancy "reaped the benefit" of the sale of Rock Hall.

Ultimately, the trial court granted rescission of the Real Estate Contract. Although it found that there was no evidence Nancy committed any fraud, the trial court determined that it would be fair and equitable to require her "to be responsible jointly and severally with her husband for the repayment of the purchase price" of Rock Hall. The trial court noted that, upon repayment, Donald and Nancy would receive Rock Hall and, therefore, be returned to the status quo ante. In conjunction with awarding rescission, the trial court also awarded prejudgment interest on the purchase price of Rock Hall, running from the date of closing.

The trial court also affirmed, in large part, the commissioner's decision to award consequential damages. However, the trial court determined that Buki and Marsho should not be reimbursed for the replacement windows. According to the trial court, by replacing the windows instead of immediately bringing an action for rescission, Buki and Marsho were limited to seeking actual damages for the money they expended on the windows. The trial court noted that Buki and Marsho had dropped their claim for actual damages, therefore, the trial court decided it would be inequitable to award consequential damages for the window replacement. Furthermore, in light of the fact that there was no evidence that Nancy had committed any wrong, the award of consequential damages was only a judgment against Donald.

The trial court initially affirmed the commissioner's decision to double the consequential damages and award attorney's fees under the VCPA. However, upon a motion for reconsideration, the trial court reasoned that the damages contemplated by the VCPA did not include the consequential damages awarded in this case because the consequential damages were awarded as part of the award of rescission. The trial court further noted that Buki and Marsho did not actually incorporate the consequential damages sought in their rescission claim as part of their VCPA claim. Therefore, the trial court

8

reversed its decision as to the VCPA claim. Similarly, the trial court reversed the award of attorney's fees under the VCPA. However, it reinstated those fees "based on fraud and not pursuant to the VCPA."

In response to the trial court's denial of damages under the VCPA, Buki and Marsho moved the trial court to reconsider the commissioner's ruling on punitive damages. After hearing argument on the matter, the trial court affirmatively stated that it considered the matter, but stood by its decision to not grant punitive damages.

On November 21, 2013, the trial court entered its final order on the matter. The trial court

- Ordered Donald and Nancy to refund the "purchase price of $590,000 with interest at the statutory rate from the date of closing (March 9, 2007) until fully paid;"

- Ordered Buki and Marsho to reconvey the property to Donald and Nancy upon refund of the purchase price; and

- Entered judgment against Donald in the amount of $135,129.41 "for consequential damages together with interest . . . plus attorney's fees and related expenses in the amount of $98,575.66."

This appeal followed.

## II. ANALYSIS

On appeal, Donald contends that the trial court lacked jurisdiction to enter a decree against him. He further argues that Buki and Marsho failed to prove that he fraudulently

9

induced them to purchase Rock Hall and that the trial court erred in awarding consequential damages, attorney's fees and prejudgment interest. In their assignments of cross-error, Buki and Marsho assert that the trial court erred in dismissing their VCPA claim and in not awarding punitive damages.

## A. JURISDICTION

Donald's first argument concerns the trial court's "equitable jurisdiction." Specifically, Donald argues that, because Buki and Marsho failed to prove that Nancy committed any fraud, the trial court lost its jurisdiction to award the equitable remedy of rescission against him. In making this argument, Donald primarily relies on Larkey v. Gardner, 105 Va. 718, 54 S.E. 886 (1906), where this Court held:

> Where the bill alleges proper matter for the jurisdiction of a court of equity, so that a demurrer will not lie, if it appears on the hearing that the allegations are unfounded, and that such matter does not in fact exist, the result must be the same as if it had not been alleged, and the bill should be dismissed for want of jurisdiction.

Id. at 722, 54 S.E. at 887.

Donald, however, takes this holding out of context. We have explained that Larkey only stands for the limited notion that a circuit court lost "equitable jurisdiction" when it was revealed that the equitable remedy sought was merely a pretext to bring an action at law in a chancery court. See Iron City

10

<u>Sav. Bank v. Isaacsen</u>, 158 Va. 609, 626, 164 S.E. 520, 525 (1932). We note, however, that with the abolition of "sides of court" and repeal of former Code § 8.01-270, the jurisdiction question at issue in <u>Larkey</u> does not arise in the same fashion today. <u>See</u> 2005 Acts ch. 681. There is also no evidence in the record, nor does Donald argue, that the relief sought by Buki and Marsho was a pretext to bring an action at law in a court of chancery. Therefore, <u>Larkey</u> is simply inapposite to the present case. Moreover, Donald has not cited, nor can we locate, any authority supporting the notion that, when a plaintiff seeks equitable relief against two defendants but only makes out a case for relief against one, the trial court somehow loses jurisdiction over the matter or would be barred from entering relief against the party as to whom proper grounds for relief was established.[1]

Furthermore, we have recognized that, in awarding rescission, "[i]t is immaterial that the <u>status quo</u> cannot be literally restored." <u>Millboro Lumber Co. v. Augusta Wood Products Corp.</u>, 140 Va. 409, 421, 125 S.E. 306, 310 (1924).

---

[1] Donald's reliance on <u>Hurst v. Williams</u>, 157 Va. 124, 160 S.E. 24 (1931), is similarly unavailing. In <u>Hurst</u>, this Court confirmed that, in the absence of a showing of fraudulent conduct by the wife, "there could be no personal judgment against [her]." <u>Id.</u> at 130-31, 160 S.E. at 27. However, the Court then returned the case to the trial court so that appropriate decrees could be imposed against the husband. <u>Id.</u> at 131, 160 S.E. at 27.

Rather, the trial court need only "be able substantially to restore the parties to the position they occupied before entering into the contract." Id. (emphasis added). Thus, when awarding rescission, "the aim of equity is to award complete, just and equitable relief, with a view to restoring the parties to the status quo and equitably adjusting their interests under the circumstances of the case." Newton v. Newton, 199 Va. 654, 660, 101 S.E.2d 580, 585 (1958) (emphasis added).

Ultimately, the fact that Donald and Nancy originally owned Rock Hall as tenants by the entirety has no bearing on whether a remedy can be granted as to Donald alone. Indeed, as far as equity is concerned, their ownership as tenants by the entirety was extinguished when they executed the Real Estate Contract. See Ferry v. Clarke, 77 Va. 397, 407 (1883) ("[A]s soon as a contract is made for the sale of an estate, equity considers the buyer as the owner of the land, and the seller as the trustee for him.").

Additionally, the rescission of the Real Estate Contract does not restore the tenancy by the entirety. We have long recognized that the title to real property is transferred by the deed, whereas the contract preceding the execution of the deed merely requires that the deed be delivered. See Miller v. Reynolds, 216 Va. 852, 855, 223 S.E.2d 883, 885 (1976) ("A deed is a mere transfer of title, a delivery so to speak of the

12

subject-matter of the contract."). Once the deed is conveyed, the provisions of the underlying contract governing the transfer of the property are extinguished. See Beck v. Smith, 260 Va. 452, 455, 538 S.E.2d 312, 314 (2000) ("Under the doctrine of merger, provisions in a contract for sale are extinguished and merged into the deed, an instrument of higher dignity."). Thus, because the provisions governing the transfer of ownership have been extinguished and merged into the deed, rescission of the underlying contract does not automatically transfer ownership of real property back to the original owners. In other words, ownership of Rock Hall did not automatically revert to Nancy and Donald as tenants by the entirety when the trial court granted rescission.

Rather, it is through the trial court's exercise of discretion in fashioning its award that ownership is transferred. In exercising such discretion, this Court has recognized that a trial court can adjust the interests of the parties as the circumstances of the case demand, see Newton, 199 Va. at 660, 101 S.E.2d at 585, and "fashion a remedy that would eliminate or lessen the hardship imposed upon a party by a particular decision." Frank Shop v. Crown Cent. Petroleum Corp., 264 Va. 1, 7, 564 S.E.2d 134, 137 (2002). Accordingly, the fact that Buki and Marsho failed to prove their claim against Nancy does not remove the trial court's jurisdiction

13

over Donald; it simply prevents the trial court from entering an award against Nancy. It is still within the trial court's discretion to "adjust" the interests of the parties such that Donald, as the sole wrongdoer, is solely responsible for refunding the purchase price in return for his sole ownership of Rock Hall.

## B. FRAUDULENT INDUCEMENT

Donald next argues that the trial court erred in awarding rescission because Buki and Marsho failed to properly plead or prove that Donald fraudulently induced them to purchase Rock Hall. Donald contends that his statements about the stain on the living room ceiling were made pursuant to a contractual obligation and, therefore, they could only be the basis of a breach of contract action, not a fraud claim. He further claims that the advertisements Buki and Marsho allegedly relied on in purchasing Rock Hall do not serve as a legitimate basis for a fraud claim because Buki and Marsho did not and could not, as a matter of law, have relied on those advertisements. Finally, Donald asserts that he had no duty to reveal the damage to the foundation because the Disclaimer Statement in the Real Estate Contract specifically informed Buki and Marsho that they were buying Rock Hall "'as is,' that is, with all defects which may exist." We disagree with this last argument and, therefore, need not address the first two arguments.

In the present case, Donald does not dispute the trial court's finding that he concealed the damage to the foundation sill.  Rather, his argument focuses on the fact that Buki and Marsho did not allege that his concealment induced them to enter into the contract, only to go to closing.[2]  He contends that, at that point, Buki and Marsho had already entered into the Real Estate Contract, therefore, the Disclosure Statement absolved him of any duty to inform them of the condition of the foundation sill.  We disagree.

In Ware v. Scott, 220 Va. 317, 320, 257 S.E.2d 855, 857 (1979), we recognized that "[a]n action for fraudulent inducement need not . . . be limited to formation of the contract."  Accordingly, we held that "performance of an executory contract may be fraudulently induced."  Id. (emphasis omitted).  We also specifically recognized that "fraudulent inducement to perform may arise when one party induces the other to perform by concealing some fact which excuses performance by the latter."  Id. at 320, 257 S.E.2d at 857 (collecting cases) (emphasis added).  Furthermore, as the present case demonstrates, the concealment that induces a party to perform may exist prior to the contract being performed.  Regardless of

---

[2] In their complaint, Buki and Marsho alleged that they "changed their position as a result of [Donald's] concealment and fraud regarding the deteriorated sill to their detriment by closing on the property."  (Emphasis added.)

15

when the concealment occurs (i.e., before or after the contract has been entered into), the wrong is still the same. Therefore, unlike fraudulent inducement to contract, where the concealment must necessarily precede the formation of the contract, the concealment at issue in a fraudulent inducement to perform claim may occur either before or after the contract has been entered into.

As with a fraudulently induced contractual agreement, where the performance of a contractual agreement is fraudulently induced, "the entire instrument -- the whole contract -- is rendered voidable at the instance of the defrauded party." Packard Norfolk, Inc. v. Miller, 198 Va. 557, 564, 95 S.E.2d 207, 212 (1956). Furthermore, "[a] seller may not rely upon and claim the benefits of a contract and at the same time through that instrument contract against and relieve himself of the consequences of his fraud that induced the other party." Id. In other words, the entire contract is rescinded including any language indicating that the sale was made "as is." See George Robberecht Seafood, Inc. v. Maitland Bros. Co., 220 Va. 109, 112, 255 S.E.2d 682, 683 (1979) ("A buyer can show that a contract of sale was induced by the seller's fraud, notwithstanding the fact the sale was made 'as is.'"). This is because such disclaimer language "'stands no higher than the

16

contract which is vitiated by the fraud.'" Id. (quoting Packard Norfolk, 198 Va. at 565, 95 S.E.2d at 213).

Here, as previously noted, Donald concealed the condition of the foundation sill. "If a party conceals a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, the concealment is as much a fraud as if the existence of the fact were expressly denied, or the reverse of it expressly stated." Clay v. Butler, 132 Va. 464, 474, 112 S.E. 697, 700 (1922). Accordingly, the trial court did not err in granting rescission based on Donald's fraudulent concealment of the damage to the foundation sill.

## C. MONETARY DAMAGES

Donald argues that the trial court erred in awarding consequential damages and attorney's fees in addition to granting rescission. Specifically, Donald takes issue with the trial court's decision to reimburse Buki and Marsho for the interest they paid on the mortgages they took out on the property, the taxes they paid on the property and the property insurance they had on the property. He further claims that the trial court should not have awarded Buki and Marsho their attorney's fees.

## 1. CONSEQUENTIAL DAMAGES

Addressing the consequential damages first, Donald argues that the trial court's monetary award, in addition to granting rescission, was erroneous. Donald notes that, under the facts of this case, the purpose of the consequential damages was to reimburse Buki and Marsho for expenses they paid to third parties and not for any benefits they bestowed upon him. Therefore, he contends that the award of consequential damages goes above and beyond the award of rescission sought by Buki and Marsho. We agree.

Rescission is the abrogation or annulling of a contract. See Chamberlaine v. Marsh, 20 Va. (6 Munf.) 283, 287 (1819). "If rescission is granted, the contract is terminated for all purposes, and the parties are restored to the status quo ante." McLeskey v. Ocean Park Investors, Ltd., 242 Va. 51, 54, 405 S.E.2d 846, 847 (1991). As previously stated, rescission only requires that the parties be restored to "substantially" the same position they occupied before entering into the contract. Millboro Lumber, 140 Va. at 421, 125 S.E. at 310.

> [W]here, on account of the act of the adverse party, complete restitution cannot be had, rescission will not be denied and the court will, so far as practicable, require the party profiting by the fraud to surrender the benefit he has received in the transaction.

Id. (collecting authorities) (emphasis added).

18

Thus, we have expressly limited the amount of restitution to the amount of benefit received by the adverse party. A party seeking restitution beyond that amount is required to bring a separate cause of action for damages resulting from the fraudulent inducement. Indeed, we have specifically recognized that, in a suit for rescission of real estate, "'[i]nterest on the amount paid by the plaintiffs is recoverable only as damages for the wrongful detention of the money by the defendant.'" Lee v. Laprade, 106 Va. 594, 602, 56 S.E. 719, 722 (1907) (quoting Talbot v. Bank, 129 Mass. 67, 70 (1880)) (emphasis added).

In the present case, there is no evidence that Donald received any benefit from Buki and Marsho beyond the sale price of Rock Hall. Obviously, he did not receive any benefit from Buki and Marsho paying interest on their mortgages or from their payment of their property taxes and property insurance. These payments were not made to him, but to unrelated third parties.

Further, the consequential damages awarded to Buki and Marsho relate to matters that, under the facts of this case, are only indirectly related to the trial court's award of rescission. The trial court's award only voided the Real Estate Contract; it had no bearing on the mortgages taken out by Buki and Marsho. The mortgages still exist and, therefore, Buki and Marsho are still required to pay interest on them. Additionally, the effect of the trial court's order was not to

19

immediately void the Real Estate Contract; rather, Buki and Marsho will continue to own Rock Hall until Donald pays them the purchase price plus interest. Only then will Rock Hall be reconveyed. During the interim, Buki and Marsho will still be required to pay taxes on the property. They will also likely be required to carry insurance on the property. Thus, the consequential damages are not restitution related to the rescission; rather, they are more akin to an award of compensatory damages. As Buki and Marsho abandoned their claim for such damages, it was error for the trial court to have awarded them such damages in the form of consequential damages.

## 2. ATTORNEY'S FEES

Donald next claims that the trial court erroneously awarded attorney's fees pursuant to the Real Estate Contract. According to Donald, Buki and Marsho only requested attorney's fees "as provided by the [Real Estate Contract]." Donald asserts that the Real Estate Contract cannot serve as a valid basis for the award of attorney's fees because it was ultimately rescinded. If Buki and Marsho's request for attorney's fees was limited to the Real Estate Contract, Donald's argument would likely be correct. See Bank of Giles County v. Mason, 199 Va. 176, 180, 98 S.E.2d 905, 907 (1957) (holding that "no relief should be granted that does not substantially accord with the case as made in the pleading"). However, Donald overlooks the fact that Buki

and Marsho did not only request attorney's fees pursuant to the Real Estate Contract.  Rather, Buki and Marsho also requested attorney's fees independent of any individual claim.[3]

This Court has repeatedly recognized that, "in a fraud suit, a chancellor, in the exercise of his discretion, may award attorney's fees to a defrauded party."  Prospect Dev. Co. v. Bershader, 258 Va. 75, 92, 515 S.E.2d 291, 301 (1999).  Here, the trial court was clearly exercising its discretion when it stated that it was awarding attorney's fees "based on fraud."  Donald has made no showing that the trial court abused its discretion.  Accordingly, the trial court did not err in awarding attorney's fees.

### D.  PREJUDGMENT INTEREST

Donald contends that the trial court erred in awarding prejudgment interest because Buki and Marsho failed to specifically request it in their pleadings.  We agree.

Code § 8.01-382[4] authorizes a trial court to award prejudgment interest.  This Court has recognized that Code §

---

[3] Specifically, in the prayer for relief in their second amended complaint, Buki and Marsho requested that the trial court provide, "with regard to any count, for a recovery of their reasonable attorney's fees incurred herein."

[4] Code § 8.01-382 states, in relevant part:
> In any . . . action at law or suit in
> equity, the final order, verdict of the
> jury, or if no jury the judgment or decree
> of the court, may provide for interest on

21

8.01-382 "leaves the assessment of interest in the discretion of the fact-finder." J.W. Creech, Inc. v. Norfolk Air Conditioning Corp., 237 Va. 320, 325, 377 S.E.2d 605, 608 (1989). However, although the award of prejudgment interest is discretionary, it is still "part of the actual damages sought to be recovered." Dairyland Ins. Co. v. Douthat, 248 Va. 627, 631, 449 S.E.2d 799, 801 (1994) (internal quotation marks omitted) (collecting cases). As such, prejudgment interest, like other damages, must be requested in a pleading before it can be awarded by a trial court. See Davis v. Beury, 134 Va. 322, 354, 115 S.E. 527 (1923) ("[I]nterest prior to verdict or decree, if recoverable at all, would be recoverable as special damages, and hence would have to be specially alleged in order to be recoverable.").

In the present case, Buki and Marsho's second amended complaint contains no request for prejudgment interest. As "a plaintiff cannot recover more than he sues for," Powell v. Sears, Roebuck & Co., 231 Va. 464, 469, 344 S.E.2d 916, 919 (1986), the trial court erred in awarding prejudgment interest on the sale of Rock Hall.

---

any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence.

22

## E. CROSS ERROR

In their assignments of cross-error, Buki and Marsho take issue with the trial court's refusal to multiply the consequential damages under the VCPA and its denial of punitive damages. With regard to their VCPA claim, Buki and Marsho contend that the trial court erred in determining that consequential damages were not a form of loss that could be doubled under the VCPA. However, in light of our above decision reversing the award of consequential damages, this issue is moot.

Buki and Marsho next argue that the trial court erred in failing to award punitive damages after it struck their VCPA claim. According to Buki and Marsho, "it was clear error for the trial court to fail to impose equivalent damages on [Donald] as punitive damages." We disagree.

"A punitive damages award is generally left to the [factfinder's] discretion because there is no set standard for determining the amount of punitive damages." Coalson v. Canchola, 287 Va. 242, 249, 754 S.E.2d 525, 528 (2014). As such an award is entirely discretionary, Buki and Marsho are required to demonstrate the trial court abused its discretion in failing to award punitive damages. Here, Buki and Marsho fail to raise any argument indicating that such an abuse of discretion

occurred.  Accordingly, we will not reverse the decision of the trial court on this issue.

### III.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of the trial court granting rescission of the Real Estate Contract and its award of attorney's fees.  Furthermore, no abuse of discretion has been shown regarding the circuit court's refusal to award punitive damages in this case.  However, we will reverse the trial court's award of consequential damages and prejudgment interest.  Accordingly, we will remand the matter to the trial court for further proceedings not inconsistent with this opinion or the opinion expressed in the companion case of Nancy W. Devine v. Charles Z. Buki, et al., ___ Va. ___, ___ S.E.2d ___ (2015) (this day decided).

Affirmed in part,
reversed in part,
and remanded.

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

While agreeing with Parts II.B. through E. of the majority opinion, I disagree with the analysis and conclusions regarding the issue of rescission in Part II.A.  I would affirm the circuit court in fully rescinding the subject real estate contract, and ordering repayment of the purchase price by Donald

24

and Nancy Devine in exchange for the reconveyance of the subject property by the appellees.

The Devines, as husband and wife, acquired the property "as tenants by the entirety with right of survivorship as at common law." Accordingly, it was in that capacity that they subsequently conveyed the property to the appellees under the terms of the contract. Upon the circuit court finding in this case that Donald fraudulently induced the appellees to both enter into the contract to purchase the property and to close on the sale, the court ordered, inter alia, the following: (i) the contract was rescinded, (ii) the Devines "shall refund to the [appellees] their purchase price," and (iii) upon "receipt of such refund," the appellees "shall reconvey the property to Donald W. Devine, Jr. and Nancy W. Devine, husband and wife, as tenants by the entireties with the right of survivorship as at common law."

The majority opinion purports in its conclusion to affirm the circuit court's rescission of the contract. In Part II.A., however, the majority makes clear that it is only approving partial rescission, i.e., rescission of the contract "as to Donald alone"; that the property is to be reconveyed "sole[ly]" to Donald; and that Donald is "solely responsible for refunding the purchase price." These holdings arise from the majority's determination that ownership of the property did not

"automatically revert to Nancy and Donald as tenants by the entirety" upon rescission of the contract - or indeed to Nancy at all.  I disagree.

In holding title to the property as tenants by the entirety, Donald and Nancy were deemed in this "unity" of marital ownership to have possessed the property as "one." Rogers v. Rogers, 257 Va. 323, 326, 512 S.E.2d 821, 822 (1999) (quoting Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984)) (internal quotation marks omitted).  This, of course, is the essential and centuries old feature of a tenancy by the entirety.  See 7 Richard R. Powell, Powell on Real Property §§ 52.01[2] & 52.02[1] (Michael Allen Wolf ed., 2014).  The transfer of the property by Donald and Nancy to the appellees was therefore a unitary conveyance, and not accomplished through individual conveyances, as neither of them was capable of conveying any part of the property by acting alone.  Hausman v. Hausman, 233 Va. 1, 3, 353 S.E.2d 710, 711 (1987); Vasilion v. Vasilion, 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951). Furthermore, absent evidence to the contrary, the purchase proceeds Donald and Nancy received from their sale of the property, "which [they] had owned as tenants by the entireties, were likewise owned and held by them as tenants by the entireties."  Oliver v. Givens, 204 Va. 123, 127, 129 S.E.2d

661, 663 (1963); see Pitts v. United States, 242 Va. 254, 260-62 408 S.E.2d 901, 904-06 (1991) (applying Oliver).

This Court has repeatedly stated that "[i]f rescission is granted, the contract is terminated for all purposes, and the parties are restored to the status quo ante." McLeskey v. Ocean Park Investors, Ltd., 242 Va. 51, 54, 405 S.E.2d 846, 847 (1991); see also Schmidt v. Household Fin. Corp., 276 Va. 108, 115, 661 S.E.2d 834, 837-38 (2008). Thus, in rescinding the contract in this case, the circuit court correctly ordered the return of ownership of the property to Donald and Nancy as tenants by the entirety. Because they acquired and sold the property in this unitary capacity, Donald's fraud did not enable the court to transform their tenancy into something different, much less exclude Nancy altogether from the reconveyance. Rather, the taint of Donald's fraud upon their tenancy rendered both Donald and Nancy liable for repayment of the purchase price in exchange for both regaining ownership of the property as originally possessed.

In an effort to avoid this result, the majority advances a non sequitur. The majority asserts that because the contract merged into the deed from Donald and Nancy to the appellees, thereby "extinguishing" the contract (citing Beck v. Smith, 260 Va. 452, 455, 538 S.E.2d 312, 314 (2000)), the subsequent rescission of the contract somehow obviated the requirement of

restoring the parties to the status quo ante.  But just the opposite is true.  By definition, rescission of the parties' previously "extinguished" contract necessarily placed them in the position they occupied before the execution and delivery of the deed - as the "unmaking" of the contract, of course, also nullified the deed to the appellees.  Black's Law Dictionary 1149 (10th ed. 2014) (defining rescission).  Consequently, the circuit court did not have the discretion, as the majority asserts, to order the reconveyance of the property other than to Donald and Nancy as tenants by the entirety in conjunction with the satisfaction of their joint obligation to repay the purchase price to the appellees.

For these reasons, I dissent with respect to Part II.A. of the majority opinion, but concur with respect to the other parts.